**CHARLES R. AZILLE, JR., Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2011-0033

Supreme Court of the Virgin Islands

May 2, 2012

KELECHUKWU CHIDI ONYEJEKWE, ESQ., Office of the Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

PAMELA R. TEPPER, ESQ., V.I. Department of Justice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(May 2, 2012)

CABRET, *Associate Justice.* Following a bench trial before a magistrate of the Magistrate Division of the Superior Court, Appellant Charles R. Azille Jr. was convicted of aggravated assault and battery and disturbing the peace. Azille first challenges both of his convictions by claiming that the Superior Court utilized the wrong standard of review to review the conviction adjudicated by the magistrate. Next, Azille challenges just his assault conviction on two additional grounds: (1) that the Superior Court's decision to require Azille to accept a bench trial notwithstanding his demand for a jury trial violated his Sixth Amendment right to a jury trial and (2) that the aggravated assault statute, which takes a simple assault and makes it an aggravated assault where the aggressor is a man and the victim is a woman, violates the Equal Protection Clause of the Fourteenth Amendment. For the reasons which follow, we reverse Azille's assault conviction and remand for a new trial, but affirm his conviction for disturbing the peace.

## I. FACTS AND PROCEDURAL HISTORY

On January 12, 2010, the People charged Azille with Aggravated Assault and Battery, in violation of V.I. CODE ANN. tit. 14, § 298(5), and Disturbing the Peace, in violation of 14 V.I.C. § 622(1). At his arraignment before a magistrate of the Superior Court, Azille entered a plea of not guilty and demanded a jury trial. On February 11, 2010, the judge of the Criminal Division of Superior Court assigned to Azille's case *sua sponte* applied the provisions of section 4 of title 14,[1] restricted the maximum potential penalty to six months, and, in the same order, the same judge utilized section 123(a)(4) of title 4, which permits a

---

[1] 14 V.I.C. § 4 provides: "In misdemeanor cases only, trial judges are authorized to limit the term of imprisonment to six months in prison; in which event, the defendant may be tried by the court, except in cases where a mandatory sentence is imposed."

magistrate of the Superior Court to hear any criminal case where the maximum penalty is no more than six months, to transfer Azille's case to the Magistrate Division of the Superior Court to be heard.

On June 4, 2010, Azille was tried by the magistrate in a bench trial. At trial, the People first called Ashauna Industrious. According to Industrious, at 2:00 a.m. on June 21, 2009, she and two friends went to a nightclub on St. Thomas. While there, Azille approached Industrious twice and grabbed her by the hand, in an attempt to coax her to dance with him. Industrious pulled her hand away from Azille to indicate that she was not interested in dancing. Industrious and Azille did not speak during the exchange, because the music was too loud. Azille approached Industrious a second time and grabbed her by her hand and by the hip. This time, Industrious pushed Azille away from her and told him verbally that she did not want to dance. In a third episode, Azille again approached Industrious and placed his hand on her hip, and Industrious again told him that she did want to dance with him and that he needed to stop his behavior. According to Industrious, Azille then began to curse her and head-butted her twice in the mouth, breaking several of her bottom teeth. A third party pulled the two apart and Industrious called the police, which led to Azille's arrest in the parking lot outside of the nightclub. Industrious also testified that, in her opinion, Azille was drunk when he approached her the third time.

The People also called one of the two young ladies that accompanied Industrious to the night club, Davina Van Holten. Van Holten corroborated most of Industrious's testimony, but stated that she did not see Azille approach Industrious before the incident that resulted in Industrious's teeth being damaged. Van Holten also did not see Azille head-butt Industrious, but testified that she turned around after being bumped by someone to see Azille standing in front of Industrious, who was holding her mouth. According to Van Holten, Industrious told her while holding her mouth that Azille had head-butted her.

After the People rested its case, Azille took the stand in his own defense. Azille testified that he approached the third young lady with Industrious, who did not testify at trial, to introduce himself. While talking to her, Industrious approached him from his left side and began screaming "in [his] ears." (J.A. 91.) Azille testified that, in an effort to get Industrious "out of [his] ears," he swung his head from side to side, and during that motion made contact with Industrious. (J.A. 91.) Afterwards,

219

Industrious shoved him and he was removed from the premises by an unidentified third person. After considering the evidence, the magistrate found Azille guilty of both charges.

The magistrate scheduled a sentencing hearing for July 12, 2010, but that hearing was rescheduled until July 26, 2010 due to a motion to continue filed by Azille. At the July 26, 2010 hearing, Azille's counsel made an oral motion for reconsideration of the judgment. Although it is unclear from the record why, the magistrate continued the sentencing and transferred the case back to the Superior Court judge originally assigned to it to consider the motion. The Superior Court rejected the motion to reconsider, and sentenced Azille to three months incarceration for disturbing the peace, and six months incarceration with all but four months suspended for the aggravated assault, and probation following the incarceration. On June 21, 2011, the Superior Court entered a judgment *nunc pro tunc* to June 13, 2011, formalizing the sentence. Azille filed a timely notice of appeal to this Court.

## II. JURISDICTION

We have jurisdiction over this appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). "A judgment in a criminal case is a final order within the meaning of" section 32(a). *Francis v. People*, 56 V.I. 370, 379 (V.I. 2012).

## III. DISCUSSION

### A. The unexplained transfer of Azille's case from the Magistrate Division to the Criminal Division of the Superior Court for sentencing did not affect Azille's substantial rights and therefore the Superior Court did not commit plain error.

Azille's first argument can only be described as convoluted and difficult to follow. As best we can tell, Azille appears to challenge what he characterizes as the Superior Court's appellate review of the conviction adjudicated by the magistrate by making three separate arguments: (1) that the Superior Court lacked jurisdiction to issue a sentence in Azille's case because the magistrate had yet to issue a final order; (2) that the trial

220

judge applied the wrong standard of review; and (3) the trial judge violated the Superior Court Rules when he failed to await sentencing by the magistrate before accepting the case. However, before we address any of those three arguments,[2] we must first determine if Azille's characterization of the case, that it was a conviction from the magistrate appealed to the Appellate Division of the Superior Court, is correct.

It is clear to this Court that Azille's characterization is incorrect — Azille's case was not appealed from the Magistrate Division to the Appellate Division of the Superior Court to review the conviction but, instead, transferred from the Magistrate Division to the Criminal Division of the Superior Court to continue the trial process. Although the magistrate did not enter an order explaining the reason for the transfer, the docket indicates a direct reassignment from the magistrate to the Superior Court judge rather than a review. Furthermore, both the attorney for the People and the attorney for the Office of the Public Defender argued at sentencing as though they were before a trial court, and not an appellate court holding arguments. We also note that the orders from the Superior Court are designated as coming from the "Criminal Division" rather than from the "Appellate Division." Moreover, in the order denying the motion to reconsider, the trial court explicitly treated the motion filed by Azille as a motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and not as a notice of appeal. *See People v. Azille*, Crim. No. ST-10-CR-25, slip op. at 2 (V.I. Super. Ct. Mar. 25, 2011). Finally, we note that the Superior Court did not issue a briefing schedule pursuant to its rules, that none of the trial attorneys filed appellate briefs, and that no appendix was ever filed with the court. Accordingly, it is clear that the parties and the Superior Court considered the matter transferred from the Magistrate Division to the Criminal Division, and the Superior Court judge simply replaced the magistrate as the trial judge at that time. Therefore, Azille's arguments, all of which challenged the Superior Court's actions on the assumption that the case was appealed from the

---

[2] Azille failed to raise any of these issues to the Superior Court, therefore we only review his arguments for plain error. *See Nanton v. People*, 52 V.I. 466, 475 (V.I. 2009). To warrant relief for plain error, this Court must find (1) an error, (2) that is plain, and (3) that affected substantial rights. *Id.* If we determine the error meets those requirements, we may grant relief in our discretion if (4) we find from the record that the error affects the " 'fairness, integrity, or public reputation of the judicial proceedings.' " *Id.* (quoting *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005)).

Magistrate Division to the Appellate Division of the Superior Court, provide no basis for a reversal.

■ However, even if this Court were to reinterpret Azille's broad premise that he had a right to be sentenced by the magistrate rather than by the Superior Court judge as a challenge to the transfer and a request to remand for new sentencing, we still could not find that the transfer from the magistrate to the Superior Court judge for sentencing amounted to plain error. As part of the test to determine whether the transfer was a plain error, Azille must demonstrate that the error affected his substantial rights.[3] *Nanton v. People*, 52 V.I. 466, 475 (V.I. 2009). *See also United States v. Olano*, 507 U.S. 725, 734-35, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993) (indicating that the appellant bears the burden of establishing the elements of plain error); *United States v. Guadalupe*, 402 F.3d 409, 410 n.1 (3d Cir. 2005) (same). Although the Legislature provided in section 123(a) of title 4 of the Virgin Islands Code that the Magistrate Division has jurisdiction to hear certain misdemeanor trials, the Legislature did not provide the Magistrate Division with exclusive jurisdiction over those misdemeanor trials and did not take away the Superior Court's jurisdiction to hear all criminal matters under the Virgin Islands Code. *See* 4 V.I.C. § 76. Accordingly, the Superior Court judge had concurrent jurisdiction to hear the matter and sentence Azille.

■ Having determined that the trial judge had the authority to sentence Azille, we next turn to whether the decision to do so affected his substantial rights. Azille does not argue that the Superior Court judge exceeded any of the statutory penalty ranges. Moreover, he does not explain how the Superior Court judge, who carefully reviewed the record in ruling on the motion to reconsider, was unqualified to sentence him. Nor does he argue that the Superior Court judge, who permitted Azille and his attorney an opportunity to be heard at sentencing, provided him with fewer protections at sentencing than he was entitled to or that he would have received before the magistrate. Indeed, we note that at sentencing the Superior Court judge specifically asked Azille if he would prefer that the judge speak with the magistrate to receive a recommendation before proceeding to sentencing, and his attorney

---

[3] Azille concedes that we must review his claim for plain error because he never objected to the use of 14 V.I.C. § 4 to convert his trial to a bench trial, despite his initial demand for a jury trial. (Appellant Br. 5.)

responded that "I've asked Mr. Azille" and "[h]e has indicated that he does not wish for you to speak to [the] [m]agistrate . . . ." (J.A. 136-37.) We find no evidence in the record that Azille would have fared differently with the magistrate than he did with the Superior Court judge.

Moreover, the Superior Court judge sentenced Azille to three months incarceration — the statutory maximum — for his disturbance of the peace conviction and six months incarceration — with two months suspended — and six months supervised probation for his assault charge, and ordered that he begin to serve his sentence on June 17, 2011. Since Azille has already fully served both of his sentences, a remand for re-sentencing would not result in any actual benefit to him. Therefore, even if the transfer was an error, it has not affected any of Azille's substantial rights. *See, e.g., United States v. Lockenwitz*, 376 Fed.Appx. 147, 150 (2d Cir. 2010) (unpublished) (erroneous imposition of consecutive sentence did not affect substantial rights when correction of error would not affect actual duration of sentence); *United States v. Amato*, 315 Fed. Appx. 1, 3 (9th Cir. 2009) (unpublished) ("[T]he error did not affect [the defendant's] substantial rights because it does not affect the length of her total incarceration.").

Accordingly, because this argument is the only argument Azille makes which applies to his conviction for disturbing the peace, we need go no further to affirm that conviction and the sentence imposed for that offense. Next, we turn to Azille's challenges to his assault conviction.

## B. The Superior Court committed plain error by invoking 14 V.I.C. § 4 to force Azille to undergo a bench trial for aggravated assault.

Azille next argues that the Superior Court violated his Sixth Amendment right to a jury trial when it *sua sponte* invoked section 4 of title 14 and required him to submit to a bench trial.[4] Specifically, Azille points to this Court's opinion in *Murrell v. People*, 54 V.I. 338, 350-67 (V.I. 2010), which he claims directly applies to this case. As with his previous argument, Azille failed to raise *Murrell* or his Sixth Amendment

---

[4] This argument does not apply to the conviction for disturbing the peace, since it carries a maximum penalty of only ninety days and is thus a "petty" offense. *See Murrell v. People*, 54 V.I. 327, 334-35 (V.I. 2010).

claims to the Superior Court, therefore we review his claims for plain error. *Id.*

 In *Murrell*, this Court set out the parameters of the Sixth Amendment right to a jury trial:

> "The Sixth Amendment guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed. . . .' It is well established that the Sixth Amendment, like the common law, reserves this jury trial right for prosecutions of serious offenses, and that 'there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision.'" *Lewis v. United States*, 518 U.S. 322, 325, 116 S. Ct. 2163, 2166, 135 L. Ed. 2d 590 (1996) (quoting *Duncan v. Louisiana*, 391 U.S. 145, 159, 88 S. Ct. 1444, 1453, 20 L. Ed. 2d 491 (1968)). To determine whether an offense is "petty" or "serious," a court must consider "objective indications of the seriousness with which society regards the offense." *Frank v. United States*, 395 U.S. 147, 148, 89 S. Ct. 1503, 1505, 23 L. Ed. 2d 162 (1969). Under this objective test, a court must "place primary emphasis on the maximum prison term authorized" because "[t]his criterion is considered the most relevant with which to assess the character of an offense, because it reveals the legislature's judgment about the offense's severity." *Lewis*, 518 U.S. at 326. Significantly, applying the objective test prevents the judiciary from substituting its judgment for that of a legislature, "which is far better equipped" to determine whether an offense is "serious" or "petty." *Id.* (quoting *Blanton v. North Las Vegas*, 489 U.S. 538, 541, 109 S. Ct. 1289, 1292, 103 L. Ed. 2d 550 (1989)). The United States Supreme Court has expressly instructed that "[a]n offense carrying a maximum prison term of six months or less is presumed petty, unless the legislature has authorized additional statutory penalties so severe as to indicate that the legislature considered the offense serious." *Id.* (citing *Blanton*, 489 U.S. at 543). Accordingly, all offenses carrying a maximum prison term in excess of six months are "serious" offenses to which a right to a jury trial attaches under the Sixth Amendment. *See Lewis*, 518 U.S. at 325; *Blanton*, 489 U.S. at 544 ("It is not constitutionally determinative . . . that a particular defendant may be required to serve some amount of jail time less than six months."); *Baldwin v.*

*New York*, 399 U.S. 66, 69, 90 S. Ct. 1886, 1888, 26 L. Ed. 2d 437 (1970) ("[W]e have concluded that no offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized."); *Frank*, 395 U.S. at 148; *Duncan*, 391 U.S. at 159.

The Virgin Islands Code, however, does not classify crimes and offenses as "serious" or "petty," but only as "felonies" and "misdemeanors." 14 V.I.C. § 2(a). Pursuant to statute, "a felony is a crime or offense which is punishable by imprisonment for more than one year; and ... every other crime or offense is a misdemeanor." 14 V.I.C. § 2(b). Therefore, while all crimes the Legislature has classified as felonies are "serious" offenses, a misdemeanor may be either "serious" or "petty" depending on whether the maximum period of incarceration authorized for that offense exceeds six months.

*Murrell*, 54 V.I. at 355-56. We also considered whether a trial court's invocation of 14 V.I.C. § 4 transformed an otherwise serious offense into a petty offense by limiting the maximum punishment to six months:

As discussed above, the objective test — for purposes of determining whether the Sixth Amendment right to a jury trial attaches — does not consider the sentence a judge has agreed to give with respect to a particular defendant, but the "maximum authorized penalty" that could potentially be imposed on *any* defendant for *that* particular offense. *See Blanton*, 489 U.S. at 544 ("It is not constitutionally determinative, therefore, that a particular defendant may be required to serve some amount of jail time less than six months."); *Frank*, 395 U.S. at 149 ("In ordinary criminal prosecutions, the severity of the penalty authorized, not the penalty actually imposed, is the relevant criterion."). This is because the purpose of the objective test is not to assess the defendant's likely loss of liberty, but to determine how society — acting through its legislature — has chosen to view a particular offense. *Blanton*, 489 U.S. at 543. *See also Lewis*, 518 U.S. at 326 (emphasizing that the maximum penalty attached to the offense is the most relevant criterion "with which to assess the character of an offense."). Consequently, while the Superior Court in *Chandler* and *Shallow* was correct to hold that, under *Lewis*, an offense with a maximum penalty of six months incarceration is presumptively a "petty" offense, these decisions failed to recognize — as this Court did in *Cheatham* and the

Superior Court did in *Daly* — that 14 V.I.C. § 4 does not alter the maximum penalty for an offense, but only limits the punishment that will be imposed with respect to a single defendant in a particular case. Thus, because it is the maximum penalty that may be imposed on any defendant for an offense that determines whether the charged offense is a serious crime entitling the defendant to a jury trial, and not the maximum penalty that a judge may, at his or her discretion, impose in a given case, invoking 14 V.I.C. § 4 to limit a particular defendant's sentence to no more than six months incarceration has no impact on that defendant's right to a jury trial pursuant to section 3 of the [Revised Organic Act]. *See also State v. Bilc*, 158 N.H. 651, 972 A.2d 1029, 1032-33 (N.H. 2009) (finding statute that denied defendants convicted of a class A misdemeanor, which was punishable by up to one year incarceration, the right to a jury trial so long as sentence imposed was consistent with that of a class B misdemeanor is unconstitutional because maximum possible sentence, not sentence actually imposed, controls right to a jury trial).

*Id.* at 357-59 (footnotes omitted).

 Here, Azille was charged with aggravated assault, which carries with it a one year maximum possible sentence. *See* 14 V.I.C. § 298(5). Accordingly, Azille was charged with a serious offense which guaranteed him a right to a jury trial. As we stated in *Murrell*, the Superior Court's invocation of 14 V.I.C. § 4 did not transform that serious offense into a petty one, and therefore the Superior Court violated Azille's Sixth Amendment right to a jury trial. Furthermore, as we found in *Murrell*, this error meets all of the requirements of plain error. *See Murrell*, 54 V.I. at 359-60 (holding that the error was plain based on binding constitutional doctrine and affected the defendant's substantial rights by completely depriving him of his constitutionally guaranteed jury trial). Therefore, we must reverse the conviction for aggravated assault and remand to the Superior Court for a new trial.[5]

---

[5] Azille argues that this error entitles him to an acquittal, rather than a new trial, on double jeopardy grounds. Azille does not, however, explain how double jeopardy is in any way implicated or why he should receive an acquittal based on the Superior Court's procedural error. Indeed, "[i]t is . . . well established that the [Double Jeopardy] Clause's 'general prohibition against successive prosecutions does not prevent the government from retrying a

## C. The doctrine of constitutional avoidance precludes us from addressing Azille's argument that 14 V.I.C. § 298(5) is unconstitutional.

Finally, Azille argues that section 298(5) is unconstitutional. Specifically, Azille notes that section 299 criminalizes the commission of "an assault or battery unattended with circumstances of aggravation" and fixes a maximum penalty at a two hundred and fifty dollar fine or six months in jail. Section 298(5), however, criminalizes the commission of "an assault and battery . . . (5) [by] an adult male, upon the person of a female or child, or being an adult female, upon the person of a child" and provides for penalties including up to a five hundred dollar fine and up to one year in jail. Accordingly, Azille argues that the only aggravating factor is the gender of the victim and the aggressor, and thus the section, at least insofar as it deals with gender, is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment.[6]

█ Although Azille's argument is interesting, we must decline to address it. First, we note that Azille, in his reply brief, concedes we should not address this argument. Azille recognizes that, as we explained recently, the doctrine of constitutional avoidance mandates that where "the statute itself gives grounds for reversal, or some procedural device to dispose of the case is available, then there is no need to question whether the statute is unconstitutional until it has been applied correctly and is correctly before the court." *Estate of Ludington v. Jaber*, 54 V.I. 678, 684 n.3 (V.I. 2011). As Justice Brandeis explained in his often cited concurrence in *Ashwander v. TVA*, 297 U.S. 288, 345-46, 56 S. Ct. 466, 80 L. Ed. 688 (1936), this doctrine is based on the "great gravity and delicacy" with which courts should approach invalidating legislative

---

defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction.' " *McMullen v. Tennis*, 562 F.3d 231, 237 (3d Cir. 2009) (quoting *Lockhart v. Nelson*, 488 U.S. 33, 38, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988)). There is a single exception to this rule following an appeal or collateral attack, reserved for "cases where the reviewing court overturned the conviction because the evidence was insufficient to sustain a guilty verdict." *Id.* Here, because we reverse based on a violation of Azille's jury trial right, and not based on the sufficiency of the evidence, double jeopardy does not prevent retrial.

[6] "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This clause of the Fourteenth Amendment applies to the Virgin Islands by force of Section 3 of the Revised Organic Act.

enactments. The people of the Virgin Islands speak through the voice of its Legislature. Therefore, out of respect for the authority ceded to the Legislature from the people, we will only consider a constitutional attack on the validity of a statute where all other issues in the case have been exhausted. Here, we have determined that Azille's conviction for assault under section 298(5) should be reversed and remanded to the Superior Court based on a violation of Azille's right to a jury trial. Accordingly, because there is a means to dispose of this case without questioning the constitutional validity of a legislative enactment, we decline to address Azille's argument that section 298(5) is unconstitutional.

## IV. CONCLUSION

Although we could not consider the constitutionality of title 14, section 298(5) in this case, the Superior Court committed plain error by violating Azille's Sixth Amendment right to a jury trial where it invoked section 4 of title 14 to force Azille to submit to a bench trial despite his request for a jury trial. Therefore, we must reverse Azille's aggravated assault conviction and remand for a new trial. However, because the conviction for disturbing the peace does not implicate Azille's Sixth Amendment right to a jury trial, and because the Superior Court did not commit plain error in imposing a sentence on Azille itself rather than permitting the magistrate to do so, we affirm the conviction for disturbing the peace. Accordingly, we reverse in part, and affirm in part, the Superior Court June 21, 2011 judgment and remand for proceedings consistent with this opinion.