IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**
March 23, 2026 02:26 PM
ST-2026-MC-00008
**TAMARA CHARLES**
**CLERK OF THE COURT**

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| GOVERNMENT OF THE VIRGIN ISLANDS ) <br> DEPARTMENT OF LICENSING AND ) <br> CONSUMER AFAIRS ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ELGADI ENTERPRISES, LLC d/b/a ) <br> ALI BABA GAS STATION & GROCERY, ) <br> ) <br> Defendant. ) | CASE NO. ST-2026-MC-00008 |

Cite as 2026 VI Super 11U

### MEMORANDUM OPINION AND ORDER

¶1    Pending before this Court are:

1. Plaintiff Government of the Virgin Islands Department of Licensing and Consumer Affairs' Petition For Enforcement Of Administrative Subpoena ("Petition"), filed January 16, 2026;

2. Defendant Elgadi Enterprises, LLC's Motion To Determine 12A V.I.C. § 155a Unconstitutional ("Motion"), filed February 24, 2026; and

3. Plaintiff's Reply To Opposition To Petition For Enforcement ("Reply"), filed March 11, 2026.

¶2    For the reasons set forth below, Elgadi Enterprises, LLC's Motion to Determine 12A V.I.C. § 155a Unconstitutional will be denied, the Government's Petition will be granted and Elgadi Enterprises, LLC will be ordered to produce the information requested by the subpoena.

### I.    FACTS AND PROCEDURAL HISTORY

¶3    On or about June 9, 2025, Plaintiff Government of the Virgin Islands Department of Licensing and Consumer Affairs ("DLCA" or the "Department") served an administrative subpoena on Elgadi Enterprises, LLC ("Elgadi") seeking the following:

- Retail Sales Records;
- Wholesale Purchase Records;
- Transportation and Delivery Costs;
- Operating Costs and Overhead;

- Pricing Methodologies;
- Excise tax filings or reports submitted to the V.I. Bureau of Internal Revenue that reflect gross revenues and net fuel related income; and
- Compliance and Regulatory Filings.

¶4    The DLCA is the executive agency responsible for enforcing consumer protection laws in the Virgin Islands. Elgadi is business entity operating a gas station under the name of Ali Baba Gas Station and Grocery. This matter came before the Court for a status conference hearing on March 16, 2026.[1] During the hearing, the Court heard sworn testimony from Horace Graham Jr., Assistant Commissioner for the Department of Licensing and Consumer Affairs. Assistant Commissioner Graham testified that the DLCA is conducting the second phase cost-of-living analysis in the territory after receiving a grant award from the Office of Management and Budget. As such, the DLCA must provide data to an external analysis company conducting the preliminary study needed to complete the project. After phase one of the study, the analysis group subsequently identified fuel costs as an imperative consideration of the cost of living in the Territory. The DLCA then subpoenaed approximately 60 gas stations, including Elgadi, to provide information about what their pricing methods entail generally.

¶5    The subpoena issued to Elgadi requested that it produce all responsive records on or before July 30, 2025. Elgadi objected to the subpoena, leading the DLCA to file its Petition For Enforcement Of Administrative Subpoena. Elgadi now moves this Court for an order declaring the Department's authority to set prices for petroleum products and conduct investigations in pursuit thereof unconstitutional.

## II.    ARGUMENTS

¶6    The DLCA argues its subpoena was "lawfully issued pursuant to the express statutory authority granted by the Legislature in 3 V.I.C. § 272(c)(1)."[2] The Department contends the subpoena seeks information directly relevant to its ongoing investigation for the purposes of determining prices and quantities as permitted by 12A V.I.C. § 155a and 3 V.I.C. § 272(c)(2).[3] Elgadi argues 12A V.I.C. § 155a is not narrowly tailored to prevent the deprivation of life, liberty, or property under the Equal Protection and Due Process Clauses of the Revised Organic Act of 1954.[4] Specifically, Elgadi contends that § 155a "permits the arbitrary, disparate treatment of merchants," is only applicable during times of disaster, encroaches on his liberty rights to a "free market," and "restricts economic activity."[5]

¶7    The DLCA replies that a statute authorizing price controls does not impinge on fundamental rights and is thus only subject to rational basis review.[6] The Department adds that a

---

[1] Attorney Julie A. Beberman appeared on behalf of the Plaintiff, and Attorney Clive C. Rivers appeared on behalf of the Defendant.
[2] Pl.'s Mot. ¶ 18.
[3] Id.
[4] Def.'s Mot. at 4-5.
[5] Id. at 8-9, 10-11.
[6] Pl.'s Reply To Opp'n To Petition For Enforcement at 3.

price control violates substantive due process only if it is "arbitrary, discriminatory, or demonstrably irrelevant to the policy the legislature is free to adopt."[7] Finally, the DLCA argues that Elgadi's Motion is premature as the Department has not yet set any pricing controls in place.[8]

## III.   LEGAL STANDARD

### A. The DLCA's Authority under 3 V.I.C. § 272 and 12A V.I.C. § 155a.

¶8      Section 272 of Title 12A of the Virgin Islands Code empowers the DLCA to "carry out studies and investigations on matters affecting consumers" and "issue subpoenas requiring the appearance of witnesses and the production of data or information to carry out the purposes of this chapter."[9]

¶9      The DLCA's authority extends to petroleum derivatives under 12A § 155a providing "[t]he Department of Licensing and Consumer Affairs may determine the prices and quantities at which all petroleum derivatives, including gasoline, any article of food, and general supplies may be sold by wholesalers, retailers, producers, or manufacturers."[10] These statutes establish that the DLCA has both investigative and subpoena authority in addition to price-setting authority over petroleum products.

¶10      In the event of non-compliance with a DLCA subpoena under the foregoing provisions, Title 3 V.I.C. § 272(c)(2) provides "If a subpoena issued by the Department is not duly complied with, the Department may invoke the aid of any court of the United States Virgin Islands to require compliance with any such subpoena."[11]

### B. Equal Protection and Due Process

¶11      The Fourteenth Amendment provides "No State shall ... deny to any person within its jurisdiction the equal protection of the laws."[12] The Virgin Islands Bill of Rights contains a parallel provision guaranteeing "[n]o law shall be enacted in the Virgin Islands which shall ... deny to any person therein equal protection of the laws."[13]

¶12      Congress first guaranteed equal protection in the Virgin Islands through the Organic Act of 1936.[14] "While the Organic Act of the Virgin Islands which was enacted in 1936 did not extend the Constitution to the Islands, it does contain a Bill of Rights which includes a due process and

---

[7] *Id.*

[8] *Id.*

[9] 3 V.I.C. § 272(c)(1)-(2).

[10] 12A V.I.C. § 155a.

[11] 3 V.I.C. § 272(c)(2).

[12] U.S. Const. amend. XIV.

[13] Revised Organic Act of 1954, § 3.

[14] *See* Organic Act of 1936, § 34, 49 Stat. 1807, 1815 (1936) (Repealed by 96 Stat. 1709 (1982)).

**Gov't of the V.I. DLCA v. Elgadi Enterprises, LLC**
**Case No. ST-2026-MC-00008**
**Memorandum Opinion and Order**
**Page 4 of 12**

2026 VI Super 11U

equal protection clause."[15] Congress has codified its intention to make the federal Constitution, including its Equal Protection Clause, applicable to the Virgin Islands in a manner consistent with its applicability to the States. Through enacting the Revised Organic Act of 1954, Congress extended the Equal Protection Clause directly to the Virgin Islands, declaring that it "shall have the same force and effect there as in the United States or in any State of the United States ..."[16] "Thus, technically, Congress guaranteed equal protection to the Virgin Islands twice: expressly and by extension."[17]

¶13    The Fifth Amendment provides that no state shall deny any person of "life, liberty, or property, without due process of law . . . ."[18] Again, the Virgin Islands Bill of Rights contains a parallel provision providing that "[n]o law shall be enacted in the Virgin Islands which shall deprive any person of life, liberty, or property without due process of law ...."[19]

## IV.    ANALYSIS

¶14    As a threshold matter, Elgadi here attacks at statute that is not, at least presently, at issue. As the DLCA noted in it's Reply, the Department has not yet attempted to or actually set in place any price controls.[20] Assistant Commissioner Graham, Jr. likewise testified that at the present summary enforcement proceeding stage, the Department simply seeks to gather information for its pending study on the cost of living in the Territory. Thus, the subpoena flows from the Department's investigatory authority, not its authority to set price controls. Nonetheless, in the interest of justice the Court will exercise its inherent discretion to address the merits of the constitutional arguments, notwithstanding their somewhat premature nature.

### A.    Enforcement of Administrative Subpoenas.

¶15    The DLCA is an administrative agency created pursuant to Title 3, Chapter 16 of the Virgin Islands Code.[21] The principal mandate of the DLCA is to "provide and administer consumer services and programs pursuant to this chapter and the Consumer Protection Law of 1973."[22] An administrative subpoena must comply with four criteria before it will be enforced.[23] The subpoena must be within the statutory authority of the agency, it must seek relevant information, and it must not be unduly burdensome.[24] The subpoena also must not be issued for an improper purpose such as harassment.[25]

---

[15] *Alton v. Alton*, 207 F.2d 667, 670, n.8 (3d Cir. 1953).

[16] Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561 (2009).

[17] *People v. Simmonds*, 2012 WL 2550958, at *2, n.3 (V.I. Super Ct. 2012).

[18] U.S. Const. amend. V.

[19] V.I.C. Rev. Org. Act of 1954, § 3.

[20] Pl.'s Reply To Opp'n To Petition For Enforcement at 3.

[21] 3 V.I.C. § 270.

[22] 3 V.I.C. § 271 Powers and duties of Department.

[23] *Territorial Ct. of Virgin Islands v. Richards*, 673 F. Supp. 152, 157 (D.V.I. 1987).

[24] *Id.*

[25] *Id.*

### 1. The DLCA Acted Within its Authority.

¶16    When reviewing the DLCA's authority to subpoena Elgadi, the Court acknowledges "[t]he general rule applied to statutes granting powers to administrative agencies is that only those powers are granted which are conferred either expressly or by necessary implication."[26]  Though courts will often enforce a duly issued administrative subpoena, this Court will nonetheless verify it is within the agency's authority to issue the subpoena once it is challenged.[27]

¶17    Among other duties and responsibilities, § 271 provides that the DLCA shall "study the problems of the consumer and determine the best methods of protecting consumer interests."[28] The DLCA may also determine the prices and quantities at which all petroleum derivatives, including gasoline, any article of food, and general supplies may be sold by wholesalers, retailers, producers, or manufacturers."[29]  To perform this function, the DLCA is empowered to "carry out studies and investigations on matters affecting consumers" and "may issue subpoenas requiring the appearance of witnesses and the production of data or information to carry out the purposes of this chapter."[30]

¶18    The Court finds that the DLCA is within its statutory authority to issue a subpoena to Elgadi. Though § 272 does not provide additional measures for how the DLCA should proceed with service of a subpoena, it does provide that when a department-issued subpoena is not complied with, the Department may invoke the aid of Virgin Islands courts to require compliance."[31]

¶19    Assistant Commissioner Graham testified that the DLCA is conducting a cost-of-living analysis in the Territory and must therefore provide data to an external analysis company conducting the preliminary study needed for the project. Because the analysis group identified fuel costs as an imperative consideration in the cost of living, the DLCA subpoenaed approximately 60 gas stations, including Elgadi, to provide information about what their pricing methods entail generally. Thus, the subpoena at issue flows directly from the DLCA's valid exercise of its power to "carry out studies and investigations on matters affecting consumers . . . ."[32]

### 2. The Subpoena Seeks Relevant Information and is Not Burdensome or Issued for Improper Purposes.

¶20    Where statutory authority exists, "the information sought is relevant and not burdensome, and if the challenging party has not put the good faith of the agency squarely in issue, a district

---

[26] Gov't Emps. Ret. Sys., Bd. of Trs. v. Gov't of Virgin Islands Off. of Att'y Gen., 2016 WL 2869960, at *5 (V.I. Super., 2016).
[27] Id.
[28] 3 V.I.C. § 272(a)(1).
[29] 12A V.I.C. § 155a.
[30] 3 V.I.C. § 272(c)(1).
[31] 3 V.I.C. § 272(c)(2).
[32] 3 V.I.C. § 272(c)(1).

Court is to act summarily."[33] Here, Elgadi's Motion does not challenge the relevancy and scope of the subpoena, nor does it contest the agency's good faith.[34] Rather, Elgadi mounts a constitutional and statutory challenge to the Department's authority, alleging the entire statutory scheme allowing the DLCA to set prices and conduct investigations in pursuit thereof is unconstitutional. Thus, finding the subpoena was properly issued and legally sufficient, the Court will next analyze whether Elgadi's constitutional claims bar enforcement of the subpoena.

### B. *Balboni* Establishes the Controlling Standard for Evaluating Equal Protection Claims in the Virgin Islands.

¶21     First, the Court notes that Elgadi brings a facial challenge to the constitutionality of § 155a based on provisions of the Virgin Islands Revised Organic Act.[35] A challenger making a facial challenge bears the burden of proving the statute could never be constitutionally applied.[36] As explained *infra*, Elgadi has not shown that section § 155a is unconstitutional on its face.

¶22     Duly enacted legislation enjoys a "presumption of constitutionality" in the Virgin Islands.[37] Furthermore, "The people of the Virgin Islands speak through the voice of its Legislature," and thus the judiciary does not sit to second-guess the Legislature's judgment.[38] The Court next turns to the appropriate standard of judicial scrutiny when a litigant challenges the constitutionality of a statute.

¶23     When evaluating whether a statute violates the Due Process or Equal Protection Clauses of the Constitution, the Supreme Court of the United States employs a tiered framework of scrutiny.[39] If the statute burdens a fundamental right or discriminates between classes of people based on membership in a protected class including race, national origin, or alienage, the Court applies strict scrutiny to evaluate the statute's constitutionality.[40] Strict scrutiny is the most demanding standard under which a law will be upheld only if it is "narrowly tailored to further compelling governmental interests."[41] If a legislative act discriminates on the basis of membership in a quasi-

---

[33] *Richards*, 673 F. Supp. at 157.

[34] Though Elgadi does not challenge the relevancy and scope of the subpoena in its Moton, during cross-examination of Assistant Commissioner Graham, counsel for Elgadi questioned if the DLCA chose to subpoena fuel merchants for reasons such membership in certain racial or ethnic groups. Defense counsel also inquired as to why other types of retailors, such as grocers, were not subpoenaed and why tax information was requested. Considering defense counsel's Motion and cross-examination questions together, it is unclear whether Elgadi's attacks the issuance of the subpoena itself or the underlying statute granting the DLCA authority to investigate and issue subpoenas.

[35] *See People of the V.I. v. Rosario*, 62 V.I. 429, 434 (V.I. Super. Ct. 2015) (*quoting United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010)) ("A facial challenge 'tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case.'").

[36] *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").

[37] *Kell v. Davies*, 2015 WL 6513238, at *5 (V.I. Super., 2015).

[38] *Azille v. People*, 2012 WL 1959632, at *6 (V.I., 2012).

[39] *See Clark v. Jeter*, 486 U.S. 456 (1988).

[40] *Plyler v. Doe*, 457 U.S. 202, 216-18 (1982).

[41] *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003).

suspect class such gender, intermediate scrutiny applies.[42] Laws must be substantially related to an important governmental interest to withstand intermediate scrutiny.[43] Statutes that do not burden a fundamental right or do not classify people based on suspect traits are subject to the least demanding level of scrutiny, rational basis review.[44] Thus, statutes evaluated under rational basis review are generally upheld and must only be rationally related to a legitimate state interest.[45]

¶24      The Supreme Court of the Virgin Islands has adopted a similar framework for interpreting the Equal Protection and Due Process clauses of the Revised Organic Act.[46] In deciding *Balboni*, the Supreme Court of the Virgin Islands decided against the wholesale adoption of the Supreme Court of the United States' tiered framework of judicial scrutiny.[47] The court found that the lowest tier of scrutiny, rational basis review, had been widely criticized as a "virtual rubber-stamp of truly minimal review."[48] Thus, rather than adopting the Supreme Court of the United States' form of rational basis review, the court looked to the scrutiny approaches used by state courts of last resort across the United States and found that many employed a heightened level of review.[49] The court then adopted heightened rational basis review, also referred to as "rational basis with bite," as the appropriate standard for evaluating equal protection claims under the Revised Organic Act.[50] Heightened rational basis review requires "a court to analyze the actual justification for the statute, rather than engage in speculation by considering any and all possible reasons for its enactment."[51] Under *Balboni*, a statute must rest on clear legislative findings and at least a "modicum of evidence" that the means employed further the ends to survive heightened rational basis review.[52] The court did not reach the *Balboni* litigant's due process claim.

## C. Elgadi's Equal Protection Claim Fails.

¶25      Elgadi maintains that § 155a violates the Fourteenth Amendment's guarantees of equal protection, as applied to the Virgin Islands by the Revised Organic Act.[53] He argues the statute does so by permitting disparate treatment of fuel merchants.[54] Elgadi's argument is unavailing.

¶26      The Fourteenth Amendment to the United States Constitution and Section 3 of the Revised Organic Act of 1954 prohibit the Territory from denying equal protection of the law to any

---

[42] *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982).

[43] *Id.*

[44] *F.C.C. v. Beach Commc'ns*, 508 U.S. 307, 313 (1993).

[45] *Belle Terre v. Boraas*, 416 U.S. 1, 8 (1974).

[46] *See Balboni v. Ranger Am. of the V.I., Inc.*, 2019 VI 70.

[47] *Id.* ¶ 46.

[48] *Id.* ¶ 44 (quoting LAURENCE H. TRIBE, AMERICAN CONSTITIONAL LAW § 16 32, at 1610 (2d ed. 1988)).

[49] *Id.* ¶ 44-47.

[50] *Id.* ¶ 46.

[51] *Id.* ¶ 44.

[52] *Id.* ¶ 49.

[53] Def.'s Mot. at 7-8.

[54] *Id.*; It is unclear from the oral arguments held on March 16, 2026, if Elgadi argues that the statute has a disparate effect on fuel merchants belonging to certain protected classes, or fuel merchants as opposed to other kinds of retailers, generally.

person.[55] Equal Protection Clause claims entail a "basic requirement" "that there be governmental action creating a classification that burdens one class and benefits another."[56] Only after a classification is established do Virgin Islands courts employ a tiered-scrutiny framework in evaluating whether a legislative act violates equal protection.[57] Government action cannot violate the Equal Protection Clause without first creating a classification among, or discriminating between, those claiming to be affected by a statute.[58] The Court must therefore make a threshold determination whether § 155a makes any classification.

¶27     The Court finds that Elgadi has not made out a valid equal protection claim regarding his assertions of disparate treatment of merchants. Through § 155a, the DLCA is simply afforded quantity and price determination powers for "petroleum derivatives" sold by "wholesalers, retailers, producers, or manufacturers."[59] The statute's language does not single out fuel providers, and uniformly applies the same regulatory authority across all covered retailors selling the category of goods considered "petroleum derivatives," including gasoline, food, and general supplies without distinction. By subjecting all merchants in the covered category to the same potential price and quantity determinations by the DLCA, the statute treats them identically. Accordingly, Elgadi's argument does not satisfy the threshold requirement that government action create a classification burdening one class and benefiting another.

¶28     When cross-examining Assistant Commissioner Graham, counsel for Elgadi asked if the DLCA chose to subpoena fuel merchants for reasons such membership in certain racial or ethnic groups.[60] Defense counsel also inquired as to why other types of retailors, such as grocers, were not subpoenaed.[61] Principally, this line inquiry confuses the DLCA's investigative authority that it presently exercises under 3 V.I.C. § 272(c)(1) with its enforcement authority under 12A V.I.C. § 155a. Further, the DLCA's decision to subpoena fuel merchants as opposed to other "wholesalers, retailers, producers, or manufacturers" of petroleum or non-petroleum products for its cost-of-living analysis does not amount to a "classification" implicating equal protection concerns.

¶29     Elgadi's argument that equal protection principles provide that 12A V.I.C. § 155a is only applicable during times of disaster is equally unconvincing. Though the DLCA's price control authority may be operationalized through emergency regulations in 11 VI ADC 1015-1,[62] § 155a's language granting the general authority to determine prices and quantities contains no emergency requirement or limitation. Instead, § 155a provides broad, ongoing authority to set prices for

---

[55] U.S. Const. amend. V, XIV; Revised Organic Act of 1954, § 3.

[56] *Gen. Offshore Corp. v. Farrelly*, 743 F. Supp. 1177, 1194-95 (D.V.I. 1990).

[57] *Balboni*, ¶ 44-47.

[58] *Sturm v. Clark*, 835 F.2d 1009, 1016 (3d Cir. 1987) ("Government action cannot violate the equal protection clause if it does not create classifications among, or discriminate between, those affected.").

[59] 12A V.I.C. § 155a.

[60] March 16, 2026, Status Conference.

[61] *Id.*

[62] *See* 11 Virgin Islands Administrative Code 1015-1, 11 V.I. R. & Regs. § 1015-1 (designating "all motor fuels, petroleum products and oils" as articles of primary need and authorizing the Commissioner of the Department of Licensing and Consumer Affairs to freeze prices for these articles during emergency situations.).

petroleum products, requiring only that the Department allows "a reasonable margin of profit" and sets "a wholesale price and a retail price" for each item.[63] Emergency-related provisions contained in 11 VI ADC 1015-1 are separate regulatory measures authorizing price freezes during times of emergency; but they do not, by extension, restrict the Department's explicit statutory authority under § 155a. The Court holds that 12A V.I.C. § 155a does not violate the Equal Protection Clause of the Revised Organic Act.

### D. Elgadi's Due Process Claim Fails.

¶30    The Fifth Amendment to the United States Constitution and Section 3 of the Revised Organic Act of 1954 ensure due process is afforded to those in the Territory.[64] While due process entails both procedural and substantive components, the Court's inquiry will address Elgadi's substantive due process claim under § 155a.[65]

¶31    Substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests."[66] Courts ask whether the government has infringed upon a protected liberty when evaluating a substantive due process claim.[67] Much like an equal protection analysis, courts apply strict scrutiny if a fundamental right is at stake and rational basis review if no fundamental right is at stake.[68] As previously noted, the Supreme Court of the Virgin Islands did not decide in *Balboni* whether heightened rational basis review applies to due process claims under the Revised Organic Act. However, "this Court has not found support for applying heightened rational basis review to equal protection claims and traditional rational basis review to substantive due process claims . . . ."[69] "The reasoning in *Balboni*, combined with the approaches taken by the federal courts and forty-six states, convinces this Court that analogous standards should apply across the lowest tier of equal protection and due process claims."[70]

¶32    Elgadi alleges that § 155a violates substantive due process and is therefore subject to strict scrutiny because it infringes on his fundamental rights to property and liberty.[71] He asserts that § 155a encroaches on his liberty rights to a "free market" and "restricts economic activity" because economic liberty includes "the freedom to contract, work, and [sic] engage in a free market without unreasonable government interference."[72] The DLCA replies that a statute authorizing price controls does not impinge on fundamental rights and is thus only subject to rational basis review.[73] The Department adds that a price control violates substantive due process only if it is "arbitrary,

---

[63] 12A V.I.C. § 155a.

[64] U.S. Const. amend. V; Revised Organic Act of 1954, § 3.

[65] Def.'s Mot. at 9-11.

[66] *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

[67] *Id.* at 721.

[68] *Gumbs*, ¶ 20.

[69] *Gumbs*, ¶ 21.

[70] *Gumbs*, ¶ 21. (explaining that "[F]orty-six of the fifty states and the federal courts apply the same standard for due process claims not implicating fundamental rights as they do for equal protection claims not based on suspect classifications.").

[71] Def.'s Mot. at 4-5.

[72] *Id.* at 8-9, 10-11.

[73] Pl.'s Reply To Opp'n To Petition For Enforcement at 3.

discriminatory, or demonstrably irrelevant to the policy the legislature is free to adopt."[74] Finally, the DLCA argues that Elgadi's Motion is premature as the Department has not yet set any pricing controls in place.[75] The Court agrees.

¶33     The Virgin Islands, as an unincorporated territory to the United States, is subject to the "Territorial Incorporation" doctrine.[76] The Territorial Incorporation doctrine classifies certain rights provided within U.S. Constitution as "fundamental" because they are "inherent principles which are the basis of all free government, which cannot be with impunity transcended."[77] "Therefore, if a right is considered 'fundamental,' Congress is prohibited from interfering with it even in the unincorporated territories."[78] Rights not considered fundamental are instead classified as "remedial," because they are considered "peculiar to our system or jurisprudence," as opposed to essential constitutional principles.[79] Thus, Congress is not required to secure "remedial" rights for U.S. citizens and those living in an unincorporated territory.[80] "In fact, even if Congress grants a remedial right by statute, it has the power to repeal the legislation at any time."[81]

¶34     The Supreme Court defines fundamental rights as essential to the concept of the ordered liberty.[82] Our understanding of fundamental rights has changed over the course of the country's history. Therefore, while certain property rights and freedom of contract were considered fundamental at early times in the nation's history, "these property rights lost their primacy."[83] In the twentieth century, personal liberties are considered fundamental.[84]

¶35     Supreme Court precedent addressing the meaning of "fundamental rights" makes clear that Elgadi's claims do not satisfy the criteria. Even if this were not so, Elgadi has not demonstrated how § 155a, granting the DLCA with price setting authority, has or will restrict his access to a free market, contracting ability, or economic activity. Elgadi's claims are speculative, as a mere expectation of future economic activity is insufficient to warrant substantive due process concerns. Because § 155a does not abrogate any fundamental rights, life, liberty, or property interest, Elgadi's claim is subject to heightened rational basis review.

¶36     Heightened rational basis review requires that the Court analyze the Legislature's actual reasoning for passing § 155a.[85] Routine research methods have yielded limited results concerning the original intent behind § 155a. Yet in *Balboni*, the court identified three analytical approaches

---

[74] *Id.*

[75] *Id.*

[76] *Virgin Islands v. Clark*, 2010 WL 1923797, at *6-7 (V.I. Super., 2010).

[77] *Id.* (citing *Dowries v. Bidwell*, 182 U.S. 244, 290–91).

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.* (citing U.S. CONST. art. IV, § 3).

[82] *Palko v. Connecticut*, 302 U.S. 319, 325 (1937).

[83] *Clark*, at 196 (citing Lee Epstein & Thomas G. Walker, Constitutional Law For A Changing America: Rights, Liberties and Justice Vol. 2 (5th ed.2004)).

[84] *Id.*

[85] *Balboni*, ¶ 44.

to heightened rational basis review.[86] (1) Under the "ends approach" a statute is invalid if it seeks an impermissible governmental purpose.[87] (2) Under the "means" approach a statute is invalid if it lacks a sufficient connection between the classification and the purpose.[88] (3) Under the combination approach, a statute is invalid if it was enacted for an impermissible governmental purpose and the classification was insufficiently related to other legitimate purposes.[89]

¶37    Both the ends and combination approaches ask the Court to consider the "actual legislative purpose" as well as any signs of an improper purpose, such as suspicion of improper influence, backroom dealings, discrimination, or a desire to harm a politically unpopular group.[90] The Court cannot ascertain any signs of improper purpose or motive without the legislative history of § 155a, and therefore focuses on the means approach

¶38    As the Court explained above, § 155a does not differentiate among merchants or retailers of petroleum products. As such, where the law creates no distinction, there is no classification for which its purpose can be matched.

¶39    Moreover, § 155a was adopted as an amendment to the original Consumer Protection Law of 1973, which serves as the foundational statutory framework for regulating commercial activity in the Territory. The DLCA serves as the executive agency responsible for administering the Consumer Protection Law and enforces "all laws in relation to weights and measures and price controls."[91] Because § 155a's addition to the Consumer Protection Law of 1973 explicitly extended its authority to set price controls, and was adopted as an amendment to the original Consumer Protection Law of 1973, it is reasonable to infer the Legislature acted with deliberate intent regarding its purpose and effect. Accordingly, "this Court cannot opine that the [statute] was insufficiently supported when enacted, nor hypothesize an improper motive."[92] Therefore, because the Court does not find § 155a lacks a sufficient connection between a "classification" and the purpose under the "means" approach, the statute survives heightened rational basis review.

Based upon the foregoing, it is hereby

**ORDERED** that Plaintiff's Petition For Enforcement Of Administrative Subpoena is **GRANTED**; and it is further

**ORDERED** that Defendant's Motion To Determine 12A V.I.C. § 155(a) Unconstitutional is **DENIED**; and it is further

---

[86] *Balboni,* ¶ 45.

[87] *Id.*

[88] *Id.*

[89] *Id.*

[90] *Gumbs,* ¶ 28.

[91] 3 V.I.C. § 272(a)(13).

[92] *Gumbs,* ¶ 20; *See also F.C.C. v. Beach Commc'ns, Inc.,* 508 U.S. at 314-15 ("Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.").

         **ORDERED** that, **on or before April 23, 2026**, Defendant Elgadi Enterprises, LLC **SHALL** comply with Plaintiff's June 9, 2025 subpoena and produce the information requested therein; and it is further

         **ORDERED** that a copy of this Memorandum Opinion and Order shall be directed to Assistant Attorney General Julie Beberman and Attorney Clive C. Rivers.

DATED: March 23, 2026               _____

                                      **DENISE M. FRANCOIS**
                         Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

**BY:** _____

       **DONNA D. DONOVAN**
       Court Clerk Supervisor 3 /23/ 2026